STEPHEN R. GOLDEN & ASSOCIATES
Attorneys at Law
Stephen R. Golden, Esq. (State Bar No. 163366)
Edwin Essakhar, Esq. (State Bar No. 287792)
600 N. Rosemead Boulevard, Suite 100
Pasadena, California 91107
Telephone:(626) 584-7800
Facsimile: (626) 568-3529
E-mail:    businesslaw@stephenrgolden.com

Attorneys for Plaintiffs
Marques D. Houston and Alma J. Houston

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| MARQUES D. HOUSTON, an individual; ALMA J. HOUSTON, an individual, | Case No.: CV13-09431 CAS (FFMx) |
| Plaintiffs, | Judge:  Hon. Christina A. Snyder |
| v. | **PLAINTIFFS' OPPOSITION TO DEFENDANT WELLS FARGO'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** |
| WELLS FARGO BANK, N.A., A National Association; WORLD SAVINGS BANK, FSB, a Federal Savings Bank; and DOES 1 through 50, inclusive, | *[Filed concurrently with Opposition to Motion to Strike Portions of First Amended Complaint and Opposition to Request for Judicial Notice]* |
| Defendants. | Date:        March 10, 2014<br>Time:        10:00 a.m.<br>Courtroom:   5 |

## TO DEFENDANT AND TO ITS ATTORNEYS OF RECORD:

Plaintiffs MARQUES D. HOUSTON and ALMA J. HOUSTON, oppose the

Motion to Dismiss and Memorandum of Points of Authorities of Defendant WELLS

FARGO BANK, N.A., a National Association, (hereinafter referred to as "Wells

Fargo").

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................... 5

II.  STANDARD OF REVIEW ............................................................. 5

   A. PLEADING STANDARD OF A COMPLAINT ................................. 5
   B. LEGAL STANDARD FOR MOTION TO DISMISS ......................... 5

III. ARGUMENT ................................................................................. 7

   A. PLAINTIFFS' STATE LAW CLAIMS ARE NOT PREEMPTED BY HOLA BECAUSE HOLA MAY ONLY BE INVOKED BY A FEDERAL SAVINGS ASSOCIATION. ................. 7
      1. *Wells Fargo Is Not A Federal Savings Association.* ......................... 8
      2. *HOLA Preemption Is Inapplicable Because The National Banking Act Conflict Preemption Standard applies* ................. 9
   B. WELLS FARGO LACKS STANDING TO FORECLOSE BECAUSE IT DOES NOT OWN THE LOAN, AND PLAINTIFFS HAVE SUFFICIENTLY STATED A CLAIM FOR LACK OF STANDING. .......................................................................... 10
   C. PLAINTIFFS HAVE STATED A CLAIM FOR WRONGFUL FORECLOSURE UNDER CIVIL CODE § 2923.55. ....................................................................... 13
   D. PLAINTIFFS HAVE STATED A CLAIM UNDER CIVIL CODE § 2924.17. ................. 15
   E. PLAINTIFFS HAVE STATED A CLAIM UNDER CIVIL CODE § 2923.7. ................. 16
   F. PLAINTIFFS HAVE STATED A CLAIM UNDER RESPA. ......................... 17
      1. *Plaintiffs' Letter Qualifies As a Qualified Written Request.* ........... 18
      2. *Wells Fargo Was Obligated To Respond To The Letter.* ............... 18
      3. *Plaintiffs Have Alleged Damages.* ...................................... 19
   G. PLAINTIFFS HAVE STATED A CLAIM FOR FRAUD IN THE INDUCEMENT. ............. 20
      1. *Plaintiffs Claim Is Not Time Barred.* .................................... 20
      2. *Plaintiffs Have Adequately Pled Their Claim For Fraudulent Inducement.* ... 21
      3. *Plaintiffs Are Not Required To Tender.* ................................ 22
   H. PLAINTIFFS HAVE STATED A CLAIM FOR BREACH OF IMPLIED COVENANT. ....... 23
   I. PLAINTIFFS HAVE STATED A CLAIM FOR VIOLATION OF BUSINESS & PROFESSIONS CODE § 17200 *ET SEQ.* .......................................................... 24
   J. PLAINTIFFS HAVE ADEQUATELY PLED A CAUSE OF ACTION FOR DECLARATORY RELIEF ............................................................................... 24
   K. PLAINTIFFS HAVE ADEQUATELY STATED A CLAIM FOR QUIET TITLE. ............. 25

IV. CONCLUSION ........................................................................... 26

# TABLE OF AUTHORITIES

## Cases

*Aguayo v. U.S. Bank, N.A.*, 653 F.3d 912  at 922 (9th Cir. 2011) . . . . . . . . . . . . . . . . . 10

*Agustin v. PNC Fin. Servs. Grp., Inc.,* 707 F. Supp. 2d 1080, 1091-92 (D. Haw. 2010) . . 20, 21

*Albizo v. Wachovia Mortgage,* 2:11-CV-02991, 2012 WL 1413996 (E.D. Cal. Apr. 20, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,  9

*Argueta v. J.P. Morgan Chase*, 787 F. Supp. 2d 1099, 1107 (E.D. Cal. 2011) . . . . . . . . 15

*Auster Oil & Gas, Inc. v. Stream*, 764 F.2d 381, 386 (5th Cir.1985) . . . . . . . . . . . . . . . 7

*Balderas v. Countrywide Bank, N.A.,* 664 F.3d 787, 790 (9th Cir. 2011 . . . . . . . . . . . 8

*Ball v. Bank of N.Y.*, 2012 U.S. Dist. LEXIS 179878 at *12 (W.D. Mo. Dec. 20, 2012) . . 13

*Bardasian v. Superior Court of Sacramento County*, 201 Cal.App.4th 1371 (2011) . . . . . 14

*Barrionuevo v. Chase Bank, N.A.*, 885 F.Supp.2d 964, 977(N.D. Cal. 2012)  . 14,  22,  26

*Baucum v. Le Baron* 136 Cal. App. 2d 593, 595 (1955) . . . . . . . . . . . . . . . . . . . . . . . 25

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) . . . . . . . . . . . . . . . . . . . . . . . 5,  6

*Bernheim v. Litt,* 79 F.3d 318(1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Brown v. Wells Fargo Bank* 168 Cal.App.4th 938, 958 . . . . . . . . . . . . . . . . . . . . . . . . 21

*California Shoppers, Inc. v. Royal Globe Ins. Co.* 175 Cal.App.3d 1, 54, 55 (1985) . . . . 23

*Cedano v. Aurora Loan Services, LLC (In re Cedano)* 470 B.R. 522, 530 (9th Cir. 2012) . 25

*Congleton v. Nat'l Union Fire Ins. Co.*, 189 Cal. App. 3d 51, 59 . . . . . . . . . . . . . . . . . 23

*Falcocchia v. Saxon Mortgage, Inc.*, 709 F. Supp. 2d 873, 886 (E.D. Cal. 2010) . . . . . 8,  9

*Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 249 (9th Cir. 1997) . . . . . . . . . . . . . . . . . 6

*Glaski v. Bank of America* 218 Cal. App. 4th 1079 (2013) . . . . . . . . . . . 10,11,  12,  24

*Guz v. Bechtel Nat. Inc.*, 24 Cal 4th 317, 349 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . 6

*In re Gilead Sciences Sec. Litig.*,536 F.3d 1049, 1057 (9th Cir. 2008) . . . . . . . . . . . . . . 7

*Intengan v. Bank of Am.*, 214 Cal. App. 4th 1047, 1053-54 (2013) . . . . . . . . . . . . . 14,  22

*Jenkins v. JP Morgan Chase Bank, N.A.*, 216 Cal. App. 4th 497, 515 (2013) . . . . . . . . . 11

*Lester v. J.P. Morgan Chase Bank, supra,* [2013 WL 633333, at p. *8] . . . . . . . . . . . . . 25

*Lona v. Citibank, N.A.*, 202 Cal. App. 4th 89, 113 (2011) . . . . . . . . . . . . . . . . . . . . . . 25

*Mabry v. Aurora Loan Services*, 185 Cal.App.4th 208 (2010) . . . . . . . . . . . . . . . . . . . 13

*Maguire v. Hibernia S & L Soc.*, 23Cal 2d 719, 728, 146 P.2d 673  (1944) . . . . . . . . . . 25

*NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . 6

*North Star Int'l. v. Arizona Corp. Comm'n.*, 720 F.2d 578, 581 (9th Cir. 1983) . . . . . . . 5

*Onofrio v. Rice*, 55 Cal. App. 4th 413, 424 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Pareto v. F.D.I.C.* 139 F. 3d 696, 699 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Pfeifer v. Countrywide Home Loans*, (2012) 211 Cal. App. 4th 1250, 1281 . . . . . . . . . . 23

*Posner v. Grunwald-Marx, Inc.*, 56 Cal. 2d 169, 186-187  (1961) . . . . . . . . . . . . . . . . . 24

*Ramirez v. Wells Fargo Bank, N.A.*, No. C 10–05874 WHA, 2011 WL 1585075 (N.D.Cal., 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Rosenthal v. Great Western Financial Securities Corp.*, 14 Cal.4[th] 394 (1996) . . . . . . . . 21
*Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986) · · · · · · · · · · · · · · · · 6
*Schiavon v. Arnaudo Bros.*, 84 Cal. App. 4th 374, 378 (2000) . . . . . . . . . . . . . . . 21
*Tang v. Bank of Am., N.A.*, 2012 WL 960373 (C.D. Cal. Mar. 19, 2012) . . . . . . . . . . . 22
*Yang v. Home Loan Funding, Inc.*, No. CV F 07-1454, LEXIS 21837 (E.D. Cal. Feb. 18, 2010) · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · 9

## Statutes

12 C.F.R. §§ 541.2, 541.11 · · · · · · · · · · · · · · · · · · · · · · · · · · 8
12 C.F.R. § 560.2 · · · · · · · · · · · · · · · · · · · · · · · · · 7,  8,  9
12 U.S.C. § 2605(e)(1)(B) · · · · · · · · · · · · · · · · · · · · · · · · · 19
12 U.S.C. § 2605(e) · · · · · · · · · · · · · · · · · · · · · · · · · · · 18
12 U.S.C. § 2605 · · · · · · · · · · · · · · · · · · · · · · · · · · · · 19
12 U.S.C. § 1464(o) · · · · · · · · · · · · · · · · · · · · · · · · · · · 9
12 U.S.C. § 165(a) (2012) · · · · · · · · · · · · · · · · · · · · · · · · · 10
California Business and Professions Code § 17205 · · · · · · · · · · · · · · · · 25
California Business and Professions Code § 17200 · · · · · · · · · · · · · · · · 25
California Civil Code § 2923.5 · · · · · · · · · · · · · · · · · · · · · · · · 10
California Civil Code § 2923.7(a) · · · · · · · · · · · · · · · · · · · · · · · 17
California Civil Code § 2923.7(b) · · · · · · · · · · · · · · · · · · · · · · · 17
California Civil Code § 2924(a)(6) · · · · · · · · · · · · · · · · · · · · · · · 11
California Civil Code § 2924(a)(6) · · · · · · · · · · · · · · · · · · · · · · · 11

## Rules

Fed. R. Civ. P. 15(a) · · · · · · · · · · · · · · · · · · · · · · · · · · · 7
Fed. R. Civ. P. 8(a)(2) · · · · · · · · · · · · · · · · · · · · · · · · · · · 6
Fed. R. Civ. P. 12(b)(6) · · · · · · · · · · · · · · · · · · · · · · · · · · 6

## Other Authorities

4 Miller & Starr, Cal. Real Estate (3d ed. 2003) Deeds of Trust, §10:212, p. 686 . . . . . . 26

## I.   **INTRODUCTION**

By this action, Plaintiffs seek to both remedy the unlawful conduct committed by Defendants, and their predecessors, in connection with the servicing of their home loan, and to ensure that their interest in the subject property at issue is protected, notwithstanding Defendants' faulty foreclosure proceedings.

In Plaintiffs' First Amended Complaint (hereinafter referred to as "FAC"), Plaintiffs set forth in great factual detail, the basis for their claims, and methodically plead all necessary elements to those claims.  Nevertheless, Motion to Dismiss the First Amended Complaint (hereinafter referred to as "Motion to Dismiss") attacks the FAC on various grounds, none of which stand scrutiny or cannot be easily repaired by leave to amend.

## II.   **STANDARD OF REVIEW**

### A. **Pleading Standard of a Complaint**

The Federal Rules simply require in the complaint a "short and plain statement of the claim showing the pleader is entitled to relief." [FRCP Rule 8 (a) (2)].

In this case, Plaintiffs have stated and identified in the First Amended Complaint the Defendant, a statement of facts that constitute the different causes of action against them with sufficient factual support and in ordinary and concise language, and a demand for judgment.

### B. **Legal Standard for Motion to Dismiss**

The Federal Rule of Civil Procedure 12(b)(6) states that a court shall dismiss a cause of action that fails to state a claim upon which relief can be granted. *See North Star Int'l. v. Arizona Corp. Comm'n.*, 720 F.2d 578, 581 (9th Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). In considering whether the complaint is sufficient to state a claim, the Court will take all

1    material allegations as true and construe them in the light most favorable to the

2    plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

3        In ruling on a motion to dismiss, the Court must accept all material allegations

4    of fact alleged in the complaint as true and resolve all doubts in favor of Plaintiff.

5    *Pareto v. F.D.I.C.*, 139 F. 3d 696, 699 (9th Cir. 1998).  That is, the complaint is

6    construed in the light most favorable to the non-moving party and all material

7    allegations in the complaint are taken to be true.  *Sanders v. Kennedy*, 794 F.2d 478,

8    481 (9th Cir. 1986).  As a general rule, leave to amend a complaint which has been

9    dismissed should be freely granted.  Fed. R. Civ. P. 15(a).

10       Motions to dismiss are disfavored, as there exists "'a powerful presumption

11   against rejecting pleadings for failure to state a claim.'" *Gilligan v. Jamco Dev. Corp.*,

12   108 F.3d 246, 249 (9th Cir. 1997) (quoting *Auster Oil & Gas, Inc. v. Stream*, 764 F.2d

13   381, 386 (5th Cir.1985)).  In considering a motion to dismiss, a district court must

14   take as true all well-pleaded allegations of material fact and must construe them in the

15   light most favorable to the plaintiff. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir.

16   2003). A court also must take into account all inferences supporting the complaint

17   that a trier of fact reasonably could draw from the evidence. See *Id.*

18       Even applying the standard set by the case of *Bell Atlantic Corporation v.*

19   *Twombly* 550 U.S. 544 (2007) cited by Defendant (Motion to Dismiss p.12 , ¶3)

20   which requires that a complaint have factual matter, not just labels, conclusions, and

21   formulaic recitation of the elements of cause of action, the instant case has sufficient

22   and enough facts to state a claim of relief that is tenable on its face.

23       With regards to a foreclosure-related case, the Ninth Circuit stated that

24   "[c]omplaints need only allege facts with sufficient specificity to notify Defendant of

25   Plaintiff's claims." *Balderas v. Countrywide Bank, N.A.,* 664 F.3d 787, 790 (9th Cir.

26   2011). "[S]o long as the Plaintiff alleges facts to support a theory that is not factually

27   implausible, the court's skepticism is best reserved for later stages of the proceedings

28   when the Plaintiff's case can be rejected on evidentiary grounds." *Id.* at 791 Quoting

1   *In re Gilead Sciences Sec. Litig.,* 536 F.3d 1049, 1057 (9th Cir. 2008).

2        Here, Plaintiffs have stated and identified in the Complaint the Defendant and

3   enumerated the different causes of action against them with sufficient factual support.

4   A complaint may not be dismissed if there is any set of facts set forth in the complaint

5   which will support a cause of action. When a Court rules on motion to dismiss, it

6   must accept the factual allegations of the complaint as true and must draw all

7   reasonable inferences in favor of the Plaintiff.  In fact, the "issue is not whether a

8   plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence

9   to support the claims." *Bernheim v. Litt,* 79 F.3d 318(1996).

10  **III.   ARGUMENT**

11     A.  **Plaintiffs' State Law Claims Are Not Preempted by HOLA Because HOLA**

12        **May Only Be Invoked By A Federal Savings Association.**

13       Wells Fargo erroneously asserts that Plaintiffs' claims are preempted under the

14  Home Owners' Loan Act ("HOLA").  Motion to Dismiss at pp.2-5.  Wells Fargo

15  states that at the time Plaintiffs obtained their loan from World Savings Bank in 2007,

16  World Savings was a federal savings bank, and therefore, Plaintiffs' claims are

17  preempted under HOLA. Id.  In other words, Wells Fargo argues that "Word Savings

18  Bank's ability to assert HOLA preemption has trickled down to the defendant in this

19  case." See *Albizo v. Wachovia Mortgage*, 2:11-CV-02991 KJN, 2012 WL 1413996

20  (E.D. Cal. Apr. 20, 2012).

21       Wells Fargo's preemption argument rests on the applicability of 12 C.F.R. §

22  560.2, a regulation promulgated by the Office of Thrift Supervision (OTS)[1].  Section

23  560.2 states that HOLA and its regulations: "preempt state laws affecting the

24  operations of federal savings associations when deemed appropriate to facilitate the

25  safe and sound operation of federal savings associations, to enable federal savings

26  associations to conduct their operations in accordance with the best practices of thrift

27  institutions in the United States, or to further other purposes of the HOLA." 12 C.F.R.

28

---

[1] On July 21, 2011, the Office of Thrift Supervision became part of the Office of the Comptroller of the Currency.

§ 560.2(a).  Certain types of state laws may escape preemption — e.g., real property law and torts — if "they only incidentally affect the lending operations of Federal savings associations." *Id.* § 560.2(c).

Federal savings associations' are banking associations chartered under HOLA § 5(o), 12 U.S.C. § 1464(o).  See 12 C.F.R. §§ 541.2, 541.11.  A defendant must demonstrate that it is such an entity before the defendant may benefit from the preemption defense.  *Falcocchia v. Saxon Mortgage, Inc.*, 709 F. Supp. 2d 873, 886 (E.D. Cal. 2010)

### 1. <u>Wells Fargo Is Not A Federal Savings Association.</u>

Wells Fargo seeks to invoke HOLA preemption based on the origination of Plaintiffs' loan with World Savings Bank in 2007.   However, Wells Fargo is not a federal savings association; accordingly, HOLA preemption does not apply to Wells Fargo.  As the court in *Albizo* noted in rejecting Wells Fargo's claim of preemption:

**[P]reemption is not some sort of asset that can be bargained, sold, or transferred. HOLA preemption was created by the OTS for the benefit of federal savings associations ... Wells Fargo is not a federal savings association, and its cited cases are therefore not persuasive. HOLA preemption does not apply to Wells Fargo.**

*Albizo* 2:11-CV-02991 KJN, 2012 WL 1413996 (E.D. Cal. Apr. 20, 2012) citing *Gerber v. Wells Fargo Bank, N.A.*, CV 11-01083-PHX-NVW, 2012 WL 413997 (D. Ariz. Feb. 9, 2012).

In this case, Plaintiffs' loan was originally held by World Savings Bank, which became Wachovia, which eventually merged with Wells Fargo.  Motion to Dismiss pp. 1-2.  All of Plaintiffs' claims, including violations of HBOR, include wrongdoings which arose after November 1, 2009 – when World Savings Bank became part of Wells Fargo.  Because Wells Fargo currently holds the loan, it is directly responsible for the foreclosure process and, as a national bank, it cannot invoke HOLA preemption.  The fact that the loan originated with Worlds Savings Bank, a federal savings association, does nothing to change this analysis.  *See Ramirez v. Wells Fargo*

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

*Bank, N.A.*, No. C 10–05874 WHA, 2011 WL 1585075 (N.D.Cal., Apr.27, 2011) (declining to find HOLA preemption of claims arising out of post-merger conduct); *see also Yang v. Home Loan Funding, Inc.*, No. CV F 07-1454, CV F 07-1454 AWI GSA, 2010 WL 670958 (E.D. Cal. Feb. 22, 2010) (denying a motion to dismiss in part because defendant had not shown that it was a federal savings association); *Falcocchia v. Saxon Mortg., Inc.*, 709 F. Supp. 2d 873, 886 (E.D. Cal. 2010) (denying motion to dismiss on HOLA preemption grounds).   Simply put, Wells Fargo, as successor to World Savings Bank, has not shown that it is in the position to assert HOLA preemption.

## 2. **HOLA Preemption Is Inapplicable Because The National Banking Act Conflict Preemption Standard applies**

For a state law to be preempted under the Office of the Comptroller of the Currency ("OCC") regulations of the National Banking Act ("NBA"), the law would have to be listed in the express preemption clause *and* be absent from the savings clause. *Aguayo v. U.S. Bank, N.A.*, 653 F.3d 912  at 922 (9th Cir. 2011). The HBOR provisions of the First Amended Complaint, including *California Civil Code* §§2923.55, 2924.17, and 2923.7, escape preemption under each rubric: it is not expressly preempted and it is included in the savings clause pertaining to debt collection.

Even if somehow Wells Fargo were correct that the preemption analysis applicable to federal savings associations is appropriate here – which it is not –  its reliance on the HOLA preemption standard is misplaced because Congress amended HOLA in 2011 as a part of the Dodd-Frank Wall Street Reform and Consumer Protection Act to conform HOLA preemption standards to the NBA conflict preemption standard. *See* 12 U.S.C. §165(a) (2012) ("Any determination by a court…regarding the relation of state law to [federal savings associations] shall be made in accordance with the laws and legal standards applicable to national banks regarding the preemption of State law.").  As such, HOLA preemption is inapplicable

1    and Plaintiffs claims are not preempted by HOLA.

2    B. **Wells Fargo Lacks Standing To Foreclose Because It Does Not Own the**

3    **Loan, And Plaintiffs Have Sufficiently Stated A Claim For Lack Of**

4    **Standing.**

5    It is an elementary and fundamental legal principle that one seeking to enforce a

6    right, must in fact be the possessor of that right; i.e. *standing.* Yet it is precisely

7    because this principle was ignored for years by lenders and financial institutions –and

8    to the detriment of many homeowners—that the California Legislature stated its intent

9    to simply clarify obvious existing law by enacting, among others, Section 2924 (a)(6)

10   of the California Homeowner Bill of Rights[2]. If anything, *Civil Code* § 2924(a)(6)

11   serves to highlight the wrongful conduct of Defendants, in foreclosing without the

12   authority to do so. *Civil Code* §2924(a)(6) specifies that lenders must show standing

13   before they commence a foreclosure sale.

14   No entity shall record or cause a notice of default to be recorded or
15   otherwise initiate foreclosure process unless it is the holder of the
     beneficial interest under the mortgage or deed of trust, the original
16   trustee or the substituted trustee under the deed of trust, or the
     designated agent of the holder of the beneficial interest.  No agent of
17   the holder of the beneficial interest under the  mortgage deed of trust,
18   original trustee or substituted trustee under the deed of trust may
     record a Notice of Default or otherwise commence the foreclosure
19   process except when acting within the scope of authority designated
20   by the holder of the beneficial interest."

21   *Id.*

22   Defendants further suggest that the recent Court of Appeals decision in *Glaski v.*

23   *Bank of America, N.A.* 218 Cal. App. 4th 1079 (2013) (finding that transfers in

24   violation of the terms of a trust instrument are void) should be ignored because it

25   departs from *Jenkins v. JP Morgan Chase Bank, N.A.*, 216 Cal. App. 4th 497, 515

26   (2013), a Fourth District Court of Appeal case that preceded *Glaski*.  In *Jenkins*, the

27   _____

28   [2] The Senate Rules Committee in its Conference Report No. 1 for Bill SB 900 states that the HBR "*Clarif[ies]*" that no
     entity shall initiate the foreclosure process unless it is the holder of the beneficial interest under the mortgage or deed of
     trust."

1   court relied primarily on *Gomes v. Countrywide Home Loans, Inc.*, 192 Cal. App. 4th

2   1149 (2011) in holding that a borrower cannot challenge the right of a foreclosing

3   beneficiary to initiate foreclosure. *Jenkins* at 511. However, *Glaski* specifically

4   distinguishes *Gomes* and other earlier court decisions in holding that "a borrower may

5   challenge the securitized trust's chain of ownership by alleging the attempts to transfer

6   the deed of trust to the securitized trust (which was formed under New York law)

7   occurred after the trust's closing date. Transfers that violate the terms of the trust

8   instrument are void under New York trust law, and borrowers have standing to

9   challenge void assignments of their loans even though they are not a party to, or a third

10  party beneficiary of, the assignment agreement". *Glaski v. Bank of America, N.A.*

11  (2013) 218 Cal. App. 4th 1079, 1083.

12       Here, Plaintiffs have specifically alleged that the promissory note was not

13  delivered into the WORLD SAVINGS BANK REMIC 31 trust before its closing date

14  of November 28, 2007. First Amended Complaint at ¶50. As the court in *Glaski*

15  stated, "factual allegations regarding post-closing date attempts to transfer his deed of

16  trust into the…Securitized Trust are sufficient to state a basis for concluding the

17  attempted transfers were void. As a result, Glaski has a stated cognizable claim for

18  wrongful foreclosure." *Id.* at 1097. Accordingly, Plaintiffs have stated a claim for

19  lack of standing.

20       In *Naranjo v. SBMC Mortgage*, the federal court stated, "The vital allegation in this

21  case is the assignment of the loan into the…Trust was not completed by May 30, 2006 as

22  required by the Trust Agreement. This allegation gives rise to a plausible inference that the

23  subsequent assignment, substitution, and notice of default and election to sell may also be

24  improper. Defendants wholly fail to address that issue. (See Defs.' Mot. 3:16-6:2; Defs.'

25  Reply 2:13-4:4.) This reason alone is sufficient to deny Defendants' motion with respect to

26  this issue." *Naranjo v. SBMC Mortgage*, 11-CV-2229-L WVG, 2012 WL 3030370

27  (S.D. Cal. July 24, 2012). The court in *Naranjo* allowed the Plaintiff to pursue her

28  claim on the basis of an allegedly improper assignment of rights to the trust. The same

1  reasoning should apply to the case at bar, given that Plaintiffs have alleged an

2  improper assignment of the note into the WORLD SAVINGS REMIC 31 trust.

3     Defendants suggest that Plaintiffs lack standing to challenge the validity of the

4  securitization process because they are not parties to the PSA. Motion to Dismiss at 7-

5  8. However, as the court in *Glaski* held, "a borrower can challenge an assignment of

6  his or her note and deed of trust if the defect asserted would *void* the assignment"

7  *Glaski v. Bank of America, N.A.* (2013) 218 Cal. App. 4th 1079, 1095 (emphasis in

8  original). Plaintiffs here challenge the assignment of their mortgage as void, not

9  merely voidable. As such, they have standing to challenge defects in the securitization

10 of their loan. The court in *Glaski* further addressed other federal court cases which held

11 that the borrower does not have standing to challenge an assignment between two other

12 parties. In distinguishing these cases, such as *Almutarreb v. Bank of New York Trust*

13 *Co., N.A.*, the court in *Glaski* stated, "[t]hese cases are not persuasive because they do

14 not address the principle that a borrower may challenge an assignment that is void and

15 they do not apply New York trust law to the operation of the securitized trusts in

16 question." *Id.* at 1098.

17    Furthermore, Plaintiffs here, are not seeking to *enforce* the agreements related to

18 the securitization, and therefore Plaintiffs are not barred from challenging breaches of

19 the agreement as evidence that Wells Fargo does not have authority to foreclose. See,

20 *e.g.*, the United States District Court's opinion in *Ball v. Bank of New York*: "But the

21 Plaintiffs do not seek to enforce the contracts or affect the relationship between the

22 parties to the contracts. Rather, the Plaintiffs point to defects in the securitization

23 process as evidence that neither title nor possession of the note passed to the trustee

24 who sought to foreclose their mortgages. Thus, the Plaintiffs seek only to use the

25 breaches as evidence that the party seeking to foreclose is not the owner of their note."

26 *Ball v. Bank of N.Y.*, 4:12-CV-00144-NKL, 2012 WL 6645695 (W.D. Mo. Dec. 20,

27 2012).

28    Plaintiffs have been prejudiced by the improper assignment of their mortgage

in contravention of the PSA because Plaintiffs could be subject to multiple enforcements.   Plaintiffs' title to the subject property has been disparaged and slandered and there is a cloud on Plaintiffs' title.  Plaintiffs have also suffered the imminent threat of losing their home through wrongful foreclosure proceedings and have incurred expenses to clear title to the property, including damage to their credit.

### C. **Plaintiffs Have Stated A Claim For Wrongful Foreclosure Under Civil Code § 2923.55.**

As discussed in Section A above, Plaintiffs' claim for violation of *Civil Code* § 2923.55 is not preempted by HOLA.  *Civil Code* § 2923.55 requires that a mortgage servicer contact  the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure at least 30 days prior to recording a notice of Default.  Civ. Code ¶ 2923.55. Under *Mabry v. Aurora Loan Services*, 185 Cal.App.4th 208 (2010) and the more recent case of *Bardasian v. Superior Court of Sacramento County*, 201 Cal.App.4th 1371 (2011), a lender violates Section 2923.5 (providing a private cause of action to a Plaintiff) unless the lender contacts the borrower in person or by telephone to "assess financial condition and explore options to prevent foreclosure."   Here, Defendants never contacted Plaintiffs to assess their financial condition or explore option to prevent foreclosure and further failed to exercise due diligence in attempting to contact Plaintiffs.  First Amended Complaint ¶65, 66, 70.  Contrary to Defendants' assertions, merely informing Plaintiffs that they would not qualify for a loan modification and that they could not apply for a home Affordable Refinance Program does not come close to satisfying the requirements under § 2923.55.

Furthermore, *Civil Code* § 2924.17(a) and (b) provide:
(a) A declaration recorded pursuant to Section 2923.55, a notice of default…or a declaration or affidavit filed in any court relative to a foreclosure proceeding shall be accurate and complete and supported by competent and reliable evidence.
(b) Before recording or filing any of the documents described in subdivision (a), a mortgage servicer shall ensure that it has reviewed

competent and reliable evidence to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and information.

*Civil Code* § 2924.17(a),(b). Here, the purported declaration of compliance fails as competent and reliable evidence of the fact that the Notice of Default is accurate and complete. Merely checking off boxes on a form declaration that recites statutory law, and verifying the contents of the declaration with an electronic signature, while the undersigned has no knowledge of the contents of that Declaration, clearly does not qualify as competent and reliable evidence. A declaration signed by a robo-signer who has no personal knowledge of whether contact was made negates the intent of *Civil Code* §§ 2923.55 and 2924.17. In a world of robo-signing in which lenders routinely sign these fraudulent declarations, this Court should not give any weight to the hearsay purported inconsistent declaration.

Moreover, while judicial notice may be taken of the *existence* of a declaration, it could not be taken of the facts of compliance asserted *in* the declaration, at least where, as here, Plaintiffs have alleged and argued that the declaration is false and the facts asserted in the declaration are reasonably subject to dispute. *See Intengan v. BAC Home Loans Servicing LP*, 214 Cal. App. 4th 1047, 1057. "[W]hen a plaintiff's allegations dispute the validity of defendant's declaration of compliance in a Notice of Default, as here, the plaintiff has 'plead enough facts to state a claim to relief that is plausible on its face'". *Barrionuevo v. Chase Bank, N.A.*, 885 F.Supp.2d 964, 977(N.D. Cal. 2012) [borrowers' allegation that the bank did not contact them before filing a notice of default was sufficient to state a violation of *Civil Code* § 2923.5 despite judicial notice taken of declaration in notice of default that asserted statutory compliance]; *see also, Argueta v. J.P. Morgan Chase*, 787 F. Supp. 2d 1099, 1107 (E.D. Cal. 2011) [again sustaining Plaintiff's Section 2923.5 claim and denying defendant's motion to dismiss, stating: "While the moving defendants' provided the Notice of Default in which Quality loan declares that it complied with the statute, the Complaint's allegations to the contrary are sufficient to defeat a motion to dismiss."].

1    In this case, what the bank actually did to comply with the statute is reasonably
2    subject to dispute and cannot be judicially noticed.  *See Skov v. U.S. Bank* (2012) 207
3    Cal. App.4[th] 690, 696 [where bank sought judicial notice of a notice of default
4    declaration stating compliance with *Civil Code* § 2923.5, whether the bank "complied
5    with section 2923.5 is the type of fact that is reasonably subject to dispute, and this,
6    not a proper subject of judicial notice."]  Accordingly, Plaintiffs' allegations of non-
7    compliance are sufficient to defeat a motion to dismiss.

8    D. **Plaintiffs Have Stated A Claim Under Civil Code § 2924.17.**

9    As discussed in Section A above, Plaintiffs' claim for violation of *Civil Code* §
10   2923.17 is not preempted by HOLA.  Defendants assert that Civil Code § 2924.17
11   only requires that the servicer review competent and reliable evidence to substantiate
12   the borrower's default and the right to foreclose.  Motion to Dismiss 12:14-15.   As
13   discussed above, *Civil Code* § 2924.17 requires any notice of default, notice of sale,
14   *assignment of deed of trust*, *substitution of trustee*, or any declaration or affidavit
15   relative to a foreclosure proceeding, *be accurate and complete and supported by*
16   *competent and reliable evidence.  Civil Code* § 2924.17(a).   Additionally, before
17   recording or filing any of the documents described in section (a), a mortgage servicer
18   must ensure that it has reviewed competent and reliable evidence to substantiate the
19   borrower's default and the right to foreclose, including the borrower's loan status and
20   information.  Indeed, section 2924.17 of the Homeowner Bill of Rights is intended to
21   force mortgage servicers to thoroughly review these documents for accuracy before
22   recording them or filing them with the court.

23   Defendants claim that Plaintiffs fail to allege any facts supporting their claim
24   that Wells Fargo continued the foreclosure proceedings without ensuring that it had
25   competent and reliable evidence to substantiate the borrower's default and the right to
26   foreclose.  However, Plaintiffs have clearly alleged facts demonstrating Wells Fargo's
27   violation of 2924.17.  Specifically, Plaintiffs have requested from Wells Fargo a copy
28   of the Note and Riders to the Note along with the Deed of trust and any Riders to the

Deed of trust.  First Amended Complaint ¶78.  In fact, Wells Fargo acknowledged receipt of Plaintiffs' requests and responded in a letter dated July 5, 2013, stating, "Pursuant to your request, enclosed is a copy of the Note and Deed of Trust which validates the obligation to Wells Fargo Home mortgage under the loan referenced above."  First Amended Complaint at ¶¶39, 40, 78, Exhibit 3 at p. 2.   However, contrary to Wells Fargo's assertion in the July 5, 2013 letter, no copies of the Note or Deed of trust were enclosed with the letter.  *Id.*

The July 5, 2013 letter from Wells Fargo continues, "For your review, a 12-month Loan History will follow under separate cover." First Amended Complaint ¶39, Exhibit 3 at p. 2.  However, Wells Fargo never sent Plaintiffs a 12-month Loan history as it stated it would in the July 5, 2013 letter.  First Amended Complaint ¶40.

Plaintiffs have requested, and Wells Fargo has failed to provide copies of any assignments or any documents ensuring that it has competent and reliable evidence to substantiate the borrower's default and the right to foreclose.  As such, Plaintiffs have stated a claim for violation of *Civil Code* § 2924.17.

**E. Plaintiffs Have Stated A Claim Under Civil Code § 2923.7.**

As discussed in Section A above, Plaintiffs' claim for violation of *Civil Code* § 2923.7 is not preempted by HOLA.  *Civil Code* §2923.7(a) mandates the following, "Upon request from a borrower who requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact."

*California Civil Code* §2923.7(b) mandates all the responsibilities that the SPOC must fulfill in order to be in compliance with the statute:

> (b) The single point of contact shall be responsible for doing all of the following: (1) Communicating the process by which a borrower may apply for an available foreclosure prevention alternative and the deadline for any required submissions to be considered for these options.(2) Coordinating receipt of all documents associated with available foreclosure prevention alternatives and notifying the borrower

of any missing documents necessary to complete the application.(3) Having access to current information and personnel sufficient to timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative.(4) Ensuring that a borrower is considered for all foreclosure prevention alternatives offered by, or through, the mortgage servicer, if any.(5) Having access to individuals with the ability and authority to stop foreclosure proceedings when necessary.

Civil Code §2923.7 (b).  In the case at bar, the Defendants have failed to satisfy these requirements. Defendants incorrectly assume and state that Plaintiffs must request a single point of contact (SPOC); however, as the statute provides, Defendants must promptly establish a SPOC upon request from a borrower of a foreclosure prevention alternative.

Plaintiffs contacted Wells Fargo in January, 2013 to request a loan modification so that they can obtain a lower payment on their loan.  First Amended Complaint ¶22. Rather than assign Plaintiffs a specific point of contact as required under section 2923.7, a Wells Fargo representative, without reviewing Plaintiffs' financial situation, informed Plaintiffs that they did not qualify for a modification and that they could not apply under HARP.   Contrary to Defendants' assertions, a "Wells Fargo representative" who is not familiar with Plaintiffs' file and who has not been assigned to Plaintiffs' file is not a single point of contact as is required under section 2923.7. This failure resulted in Plaintiffs receiving inaccurate and inadequate information relating to their options and the status of their foreclosure prevention alternatives.

**F. Plaintiffs Have Stated A Claim Under RESPA.**

On or about June 26, 2013, Plaintiffs' representative Aaron Golden sent a Qualified Written Request ("QWR") to Wells Fargo in compliance with and pursuant to the Real Estate Settlement Procedures Act 12 U.S.C. Section 2605(e).   First Amended Complaint ¶36; Exhibit 2.  Contrary to Defendants' assertions, Plaintiffs' QWR is proper and Plaintiffs have stated a claim under RESPA due to Defendants'' failure to respond.

**1.  Plaintiffs' Letter Qualifies As a Qualified Written Request.**

Defendants misstate and mischaracterize the requirements for a valid Qualified Written Request ("QWR") under 12 U.S.C. §2605(e)(1)(B).  Pursuant to 12 U.S.C §2605(e)(1)(B):

> (B) Qualified written request
> For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that
> **(i)** includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
> **(ii)** includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error **or** provides sufficient detail to the servicer regarding other information sought by the borrower.

*Id.* (emphasis added.)  It is not a requirement that Plaintiffs include a statement of reasons for the belief that the account is in error. Rather the code requires the borrower to include a statement of reasons for the belief the account is in error *or* provide "sufficient detail to the servicer regarding other information sought by the borrower". *Id.* Plaintiffs have provided sufficient detail to Wells Fargo regarding the information sought by Plaintiffs given the qualified written requests list specific documents and specific questions related to servicing of Plaintiffs' loan.  As such, Plaintiffs letter qualifies as a QWR.

**2.  Wells Fargo Was Obligated To Respond To The Letter.**

12 USC §2605(e)(2) specifically provides that "not later than 30 days…after the receipt from any borrower of any qualified written request…the servicer shall:

> (C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes –
> (i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and
> (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

12 USC §2605(e)(2)(C).

Defendant states no RESPA-mandated response was required because the letter did not identify any specific servicing discrepancy and because the QWR sent to Wells Fargo was purportedly an improper QWR. As discussed above, Plaintiffs' letter was a proper QWR with specific questions related to the servicing of Plaintiffs' loan. Further, Defendants cite to *Junod*, 2012 U.S. Dist LEXIS 3865, at **11-12 for the proposition that, "[E]ven if Plaintiff's August 16, 2011 letter was otherwise a proper QWR, their request exceeds the scope of information Defendants were required to provide in response." Motion to Dismiss at p.17. In this case, however, Defendants did not provide any response at all. In fact, Defendants stated in their letter dated July 5, 2013 (attached as Exhibit 3 to First Amended Complaint) that they have enclosed "a copy of the Note and Deed of trust which validates the obligation to Wells Fargo Home Mortgage under the loan referenced above." In reality, no copies of the Note or Deed of Trust were enclosed as stated. Defendants further failed to provide Plaintiffs with a 12-month Loan History as it stated it would in the July 5, 2013 letter. First Amended Complaint ¶40; Exhibit 3 at p. 2.

Plaintiffs have adequately pled all elements of the claim required by statute. Defendants had an obligation to respond by law and have failed to comply.

### 3. **Plaintiffs Have Alleged Damages.**

In *Agustin v. PNC Fin. Servs. Grp., Inc.,* 707 F. Supp. 2d 1080, 1091-92 (D. Haw. 2010) the court held "This court is unpersuaded that actual, pecuniary damages must be pled...The statute expressly requires the existence of damages caused by a mortgage servicer's failure to take action; it does not expressly require allegations in a pleading. Nonetheless, a number of courts have interpreted the statute as requiring a plaintiff to allege pecuniary damages to state a claim. A pleading requirement has the effect of limiting a RESPA claim to circumstances in which a plaintiff can show that a mortgage servicer's failure has caused actual harm. Although Plaintiff do not allege details of how any RESPA violation caused them pecuniary loss, they do allege actual damages, saying they need discovery before stating the amount of loss caused by the

1  violation. That is sufficient at this stage of the case [12(b)(6) Motion], even assuming
2  RESPA includes a pleading requirement. Of course, if Plaintiff is unable to show, in a
3  summary judgment proceeding, actual damages resulting from the RESPA violations,
4  they may find their RESPA claim at an end." *Agustin v. PNC Fin. Servs. Group*, 707 F.
5  Supp. 2d 1080, 1091-1092 (D. Haw. 2010).

6       Nevertheless, Plaintiffs have alleged damages as a result of Defendants' failure
7  to respond to their QWR as there is a cloud on Plaintiffs' title and Plaintiffs have
8  incurred, and continue to incur, expenses in order to clear title to their property.
9  Plaintiffs have suffered legal expenses to right the wrongs committed by Defendants.
10 As such, Plaintiffs have stated a claim under RESPA.

11      **G. Plaintiffs Have Stated A Claim For Fraud In The Inducement.**

12      Plaintiffs' claim for fraud in the inducement is based on the failure of
13 Defendants to disclose material loan terms as well as misrepresentations made by
14 Defendants which affected Plaintiffs' decision to enter into the loan transaction with
15 Wells Fargo in 2007 as well as accept a "modification" in 2011.  As discussed in
16 Section A above, Plaintiffs' claim for fraud in the inducement is not preempted by
17 HOLA.

18      **1. Plaintiffs Claim Is Not Time Barred.**

19      Defendants claim that Plaintiffs' claim for fraud in the inducement is time-
20 barred because Plaintiffs knew or should have been aware of the loan terms when they
21 signed the loan documents on September 23, 2007, or when the loan payments
22 increased after the first year.  However, Defendants continued to actively conceal and
23 misrepresent facts to Plaintiffs through at least November 2011.  Plaintiffs could not
24 have discovered, and were unaware of the true terms of the loan until they began to
25 prepare for this lawsuit.  Any applicable statute of limitations have been tolled by
26 Defendants' continued concealments and misrepresentations to Plaintiffs about their
27 loan.

28 / / /

2. **Plaintiffs Have Adequately Pled Their Claim For Fraudulent Inducement.**

In *Rosenthal v. Great Western Financial Securities Corp.*,14 Cal.4[th] 394 (1996), the court noted that fraud in the inducement by misrepresentation is proper grounds for reforming or rescinding the contract "or part of it". "When a Plaintiff alleges fraud in the inducement, the Plaintiff is asserting it understood the contact it was signing, but that its consent to the contract was induced by fraud. A contract fraudulently induced is voidable." *Brown v. Wells Fargo Bank* 168 Cal.App.4[th] 938, 958. "A voidable deed… is one where the grantor is aware of what he or she is executing, but has been induced to do so through fraudulent misrepresentations." *Schiavon v. Arnaudo Bros.*, 84 Cal. App. 4th 374, 378 (2000); See also, *Fallon v. Triangle Management Services, Inc.* (1985) 169 Cal.App.3d 1103, 1106.

Here, Plaintiffs were aware that they were signing a Note in 2007and a trial period plan modification in 2011, however Plaintiffs were induced into doing so through fraudulent misrepresentations by Wells Fargo. Specifically, at the time Plaintiffs entered into the loan transaction in 2007, they were told by Defendants that their mortgage payments would be fixed for five years and that if Plaintiffs were having problems with the loan, Plaintiffs could call and renegotiate or refinance. First Amended Complaint ¶111-114. However, when Plaintiffs attempted to contact Defendants about their loan, Defendants transferred Plaintiffs calls from one staff member to another and would not negotiate in good faith. First Amended Complaint ¶114. Furthermore, in November 2011, Plaintiffs contacted Wells Fargo to negotiate a reduction on their trial period payment. A Wells Fargo representative informed Plaintiffs that their payments would not be reduced at this time, but that Plaintiffs could "call to arrange lower payments after a year or so." First Amended Complaint ¶16. Plaintiffs relied on Wells Fargo's representations and made modified payments under the ruse that they would be able to reduce their payments "after a year or so". First Amended Complaint ¶117, 119. On or about January 2013, about one year after

1  making the modified payments, Plaintiffs again contacted Defendants in order to

2  negotiate their loan payments.  This time, a Wells Fargo representative informed

3  Plaintiffs that they did not qualify for a modification and that they could not apply

4  under the Home Affordable Refinance Program.  First Amended Complaint ¶118.

5  Plaintiffs would not have entered into the loan transactions with Defendants had they

6  known of the true facts and nature of the loan.

7       **3.  <u>Plaintiffs Are Not Required To Tender.</u>**

8       Defendants assert that Plaintiffs' fraud claim fails because they have not

9  tendered the indebtedness.  To impose a tender requirement would be especially

10  inappropriate here because this case arose pre-foreclosure.  A number of federal courts

11  have examined the case law and found that California law does not require a tender

12  when the challenge is made before the foreclosure sale is scheduled to take place.

13  *Barrionuevo v. Chase Bank* (N.D. Cal. 2012) 85 F. Supp. 2d 964, 969 (deciding not to

14  require tender where plaintiffs alleged that defective notice would make the scheduled

15  sale void); *Tang v. Bank of Am., N.A.* (C.D. Cal. Mar. 19, 2012) 2012 WL 960373, at

16  *4. Recently, the California Court of Appeal has also clarified that the tender

17  requirement does not apply to pre-foreclosure challenges. *Intengan v. Bank of Am.*

18  (2013) 214 Cal. App. 4th 1047, 1053-54 (tender does not apply to actions seeking to

19  enjoin a foreclosure sale); *Pfeifer v. Countrywide Home Loans*, (2012) 211 Cal. App.

20  4th 1250, 1281 (same).

21       Moreover, California courts have recognized that an offer of "tender may not be

22  required where it would be inequitable to do so." *Onofrio v. Rice*, 55 Cal. App. 4th

23  413, 424 (1997) (affirming trial court's grant of relief to plaintiff on rescission claim

24  although plaintiff failed to tender).  Similarly, "when the person making the claim has

25  a counter-claim or set-off against the beneficiary, ... it is deemed that they offset each

26  other, and if the offset is equal to or greater than the amount due, a tender is not

27  required *Id*.  Here, Plaintiffs have a counter claim against Defendants and are

28  challenging that Defendants lack the legal power to foreclose.  As such, tender is not

1   required.

2   **H.  Plaintiffs Have Stated A Claim For Breach Of Implied Covenant.**

3       The covenant of good faith and fair dealing is implied in every contract

4   (including the loan at issue here) and prevents one party from "unfairly frustrating the

5   other party's right to receive the benefits" of the contract.  See, e.g. *Guz v. Bechtel Nat.*

6   *Inc.*, 24 Cal 4th 317, 349 (2000).   "'Breach of the implied covenant of good faith and

7   fair dealing involves something beyond breach of the contractual duty itself,' and it has

8   been held that '[b]ad faith implies unfair dealing rather than mistaken judgment....'

9   *Congleton v. Nat'l Union Fire Ins. Co.*, 189 Cal. App. 3d 51, 59 (quoting *California*

10   *Shoppers, Inc. v. Royal Globe Ins. Co.* (1985) 175 Cal.App.3d 1, 54, 55. For example,

11   in the context of an insurance contract, "It is the obligation, deemed to be imposed by

12   the law, under which the insurer must act fairly and in good faith in discharging its

13   contractual responsibilities. Where in so doing, it fails to deal *fairly and in good faith*

14   with its insured by refusing, without proper cause, to compensate its insured for a loss

15   covered by the policy, such conduct may give rise to a cause of action in tort for

16   breach of an implied covenant of good faith and fair dealing.  *California Shoppers, Inc.*

17   *v. Royal Globe Ins. Co.*, 175 Cal. App. 3d 1 (emphasis in original).

18       Here, Plaintiffs have adequately stated a claim for breach of an implied covenant

19   of good faith and fair dealing.  Specifically, Plaintiffs have pled that Defendants

20   improperly securitized and split the deed of trust from the promissory note in

21   contravention of the express terms of the PSA, Defendants knowingly and actively

22   concealed and misrepresented material facts of the loan transaction, recorded an

23   inaccurate notice of default, and never in good faith explored options to avoid

24   foreclosure or assessed Plaintiffs' financial situation.

25       Defendants claim that Plaintiffs have failed to perform on the contract by failing

26   to make all of her mortgage payments.  However, Plaintiffs' failure to perform *all* of

27   their obligations under the contract do not excuse Defendants' performance if Plaintiffs

28   have substantially performed their obligations.  Plaintiffs' substantial performance of

1   the contract is an issue of fact. *Posner v. Grunwald-Marx, Inc.*, 56 Cal. 2d 169, 186-

2   187 (1961) .  Plaintiffs have paid thousands of dollars in performance of their

3   obligations under the contract have therefore substantially performed.

### I. Plaintiffs Have Stated A Claim For Violation of Business & Professions Code § 17200 *et seq.*

6          As discussed in Section A above, Plaintiffs' claim for violation of Business and

7   Professions Code §17200 *et seq.* is not preempted by HOLA.  Defendants claim that

8   Plaintiffs lack standing to assert a claim under §17200; however, where Plaintiffs have

9   stated a claim for wrongful foreclosure based on a void transfer as in Glaski, supra, "It

10  follows that [Plaintiff] has stated claims for quiet title… cancellation of instruments,

11  and *unfair business practices under Business and Professions Code section 17200*"

12  Glaski, supra, 218 Cal. App. 4th 1079, 1101; citing, Susilo v. Wells Fargo Bank, N.A.

13  (C.D.Cal. 2011) 796 F.Supp.2d 1177, 1196 (emphasis added).

14         Moreover, Plaintiffs have standing because they have alleged damages (e.g.,

15  FAC ¶59-60).  As the Business and Professions Code states, "the remedies or penalties

16  provided by this chapter are cumulative to each other and to the other remedies or

17  penalties available under all other laws of this state." Business and Professions Code

18  §17205.

19         In addition, Plaintiffs have alleged proscribed conduct through the other causes

20  of action in the Frist Amended Complaint. This is because "section 17200 "borrows"

21  violations of other laws and treats them as unlawful practices independently

22  actionable". *State Farm Fire & Casualty Co. v. Superior Court* 45 Cal. App. 4th 1093,

23  1103 (1996).  Accordingly, Plaintiffs have stated a claim for violation of Business and

24  Professions Code §17200 *et seq.*

### J. Plaintiffs Have Adequately Pled A Cause Of Action For Declaratory Relief.

26         "A complaint for declaratory relief is legally sufficient if it sets forth facts

27  showing the existence of an actual controversy relating to the legal rights and duties of

28  the respective parties under a written instrument, and requests that these rights and

1   duties be adjudged by the court." *Maguire v. Hibernia S & L Soc.*, 23Cal 2d 719, 728,

2   146 P.2d 673(1944) .

3       A present controversy exists in that Plaintiffs allege, and Defendants deny, that

4   Defendants lack standing to issue a Notice of Default and initiate foreclosure of

5   Plaintiffs' property and that Defendants further failed to comply with Civil Code §§

6   2923.5, and 2924 et seq.  Plaintiffs allege that a controversy exists currently between

7   Plaintiffs and Defendants as to whether Defendants have any authority to foreclose and

8   Defendants' right to the Property.  Plaintiffs allege that Defendants do not have any

9   such authority, and simply seek a declaration by this Court to that effect.  A

10  declaration issued by this Court as to the rights and duties of the parties concerning the

11  subject property, would add value to the proceedings.

12  **K. Plaintiffs Have Adequately Stated  A Claim For Quiet Title.**

13      An action for Quiet Title may be brought to establish against adverse claims to

14  real or personal property or any interest therein.  "The purpose of pursuing a Quiet

15  Title action is the Plaintiff's desire to have conflicting claims against an interest in

16  property settled." *Baucum v. Le Baron* (1955)136 Cal. App. 2d 593, 595. Plaintiffs'

17  quiet title claim stands on Plaintiffs' allegations that Defendants have no interest in the

18  subject property and lacked authorization to attempt, or effect, a nonjudicial

19  foreclosure, and further that Defendants  did not comply with California law for

20  nonjudicial foreclosure, namely *Civil Code* §§ 2923.55, and 2924 et seq.

21      As discussed above, tender is not required where the foreclosure sale is void,

22  rather than voidable, such as when a plaintiff proves that the entity lacked the authority

23  to foreclose on the property. *Lester v. J.P. Morgan Chase Bank, supra,* [2013 WL

24  633333, at p. *8]; 4 Miller & Starr, Cal. Real Estate (3d ed. 2003) Deeds of Trust,

25  §10:212, p. 686.)  Courts have consistently held that where a foreclosure is challenged

26  not merely for procedural irregularities, but on the grounds that the initiating party was

27  not authorized, no tender is required. See *Lona v. Citibank, N.A.* (2011) 202 Cal. App.

28  4th 89, 113 ("[N]o tender will be required when the trustor is not required to rely on

1   equity to attack the deed because the trustee's deed is void on its face."); *Cedano v.*
2   *Aurora Loan Services, LLC (In re Cedano)* (9th Cir. BAP 2012) 470 B.R. 522, 530
3   ("[T]o the extent the Debtor alleged that the foreclosure was substantially defective
4   because unauthorized persons initiated the procedure, rendering the sale void, he has
5   met one of the exceptions to the requirement of tender."); Barri*onuevo v. Chase Bank,*
6   *N.A.* (N.D. Cal. 2012) 885 F. Supp. 2d 964, 969 ("[T]he Barrionuevos have a fairly
7   strong argument that tender—or at least full tender—should not be required because
8   they are contesting not only irregularities in sale notice or procedure, but the validity of
9   the foreclosure in the first place. Courts have declined to require tender in just such
10  circumstances.").

11  ## IV.   **CONCLUSION**

12      For the foregoing reasons, Plaintiffs respectfully request that the Court overrule
13  Defendants' Motion to Dismiss in its entirety. Alternatively, leave should be granted to
14  amend those causes of action the Court may deem to require amendment.

16                          STEPHEN R. GOLDEN & ASSOCIATES

17  Date: February 13, 2014          _____/s/ Stephen R. Golden_____
18                                   Stephen R. Golden, Esq.
19                                   Edwin Essakhar, Esq.
                                     Attorney for Plaintiffs
20                                   Marques D. Houston and Alma J. Houston

## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the City and County of Los Angeles, California. I am over the age of 18 and not a party to the within action. My business address is 600 N. Rosemead Blvd, Suite 100, Pasadena, California 91107-2101.

On the date set forth below, I served the following document(s) described as:

**PLAINTIFFS' OPPOSITION TO DEFENDANT WELLS FARGO'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

On the interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as follows:

| Attorney | Telephone/ Facsimile/Email | Party |
| --- | --- | --- |
| Lynette Gridiron Winston, Esq.<br>ANGLIN, FLEWELLING, RASMUSSEN, CAMPBELL & TRYTTEN LLP<br>199 south los Robles Avenue, Suite 600<br>Pasadena, CA 91101-2459 | Tel: (626) 535-1900<br>Fax: (626) 577-7764<br>Email: Lwinston@afrct.com | Attorneys for Defendants WELLS FARGO BANK, N.A., successor by merger with Wells Fargo Bank Southwest, N.A. f/k/a Wachovia Mortgage, FSB, f/k/a WORLD SAVINGS BANK, FSB (also erroneously sued separately as WORLD SAVINGS BANK, FSB) ("Wells Fargo") |

☒ (MAIL) I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this firm's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at Los Angeles, California.

☐ (OVERNIGHT DELIVERY) I deposited in a box or other facility regularly maintained by Federal Express, an express service carrier, or delivered to a courier or driver authorized by said express service carrier to receive documents, a true copy of the foregoing document in sealed envelopes or packages designated by the express service carrier, addressed as stated above with fees for overnight delivery paid or provided for.

☐ (MESSENGER SERVICE) I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed and provided them to a professional messenger service for service. A separate Personal Proof of Service provided by the professional messenger will be filed under separate cover.

☐ (FACSIMILE) Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached.

☐ (E-MAIL or ELECTRONIC TRANSMISSION) Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed, I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☒ (CM/ECF Electronic Filing) I caused the above document(s) to be transmitted to the office(s) of the addresses listed above by electronic mail at the email address(s) set forth above pursuant to Fed. R. Civ. P.5. (d)(1). "A Notice of Electronic Filing (NEF) is generated automatically by the ECF system upon completion of an electronic filing. The NEF, when e-mailed to the e-mail address of record in the case, shall constitute the proof of service as required by Fed. R. Civ.P.5.(d)(1). A copy of the NEF shall be attached to any document served in the traditional manner upon any party appearing pro se.

☐ (State)     I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☒ (Federal)     I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on February 13, 2014, at Pasadena, California.

__Susie Nair_____
(Type or print name)

_Susie Nair_____